IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LORENZA GERALD FEREBEE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:19cv00629 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WARDEN C. MANIS, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |       United States District Judge |
| Defendants. | ) | |

Plaintiff Lorenza Gerald Ferebee, Jr., a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. He alleges that numerous prison officials violated his right to access the court or retaliated against him for filing this lawsuit and grievances complaining about the law library. This matter is currently before the court on Defendants' Motion to Dismiss.[1] (ECF No. 52.) After reviewing the motion and the record, the court concludes that Defendants' motion must be granted in part and denied in part.

## I.   BACKGROUND

Ferebee is confined at Wallens Ridge State Prison ("Wallens Ridge"), a facility operated by the Virginia Department of Corrections ("VDOC"). Presently before the court is the fourth version of his Complaint ("Am. Compl.," ECF No. 44), in which Ferebee's allegations span

---

[1] The defendants (collectively "Defendants") are VDOC Regional Administrator C. Manis (also a former warden at Wallens Ridge); Wallens Ridge Warden David Zook; Grievance Coordinator B. J. Ravizee; Captain P. J. Burgin; C. Building Unit Manager J. Carico; Hearing Officer W.R. Hensley; Lieutenant T.B. Smith; Lieutenant L. A. Light; Lieutenant B. McCray; Sergeant D. Woodard; Officer M. W. Gilley; Officer Gilbert; Counselor T. Tiller; and Counselor H. A. Osborne.

41 pages, complaining of largely unrelated events that allegedly occurred between February 2019 and August 2020.[2]

Ferebee was convicted in August 2006 in the Chesapeake Circuit Court for malicious wounding and other offenses, including a probation violation. The court sentenced him to 30 years in prison. Ferebee pursued appeals and post-conviction remedies without success. (*See generally* Am. Compl. 7–10 [ECF No. 44].)

The winter of Ferebee's discontent at Wallens Ridge began in February or March 2019, shortly after he arrived there. He discovered that an inmate may submit a Law Library Request form, asking for copies of up to seven items of legal materials per week, for which he must agree to pay 10 cents per page. Only after that charge is processed will the inmate receive copies of the requested legal documents. Ferebee complained about this system to then-Warden Manis, stating that he needed legal help in "Petitioning the Government to Redress [his] constitutional violations within (his) Criminal Prosecution." (*Id.* at 11.) Manis told Ferebee to write requests to access law library materials or to see the institutional attorney. Ferebee then wrote to Manis, stating that he had only rarely received the legal materials he had requested. He asked Manis why Wallens Ridge does not provide inmates adequate access to legal resources, but Manis only responded that inmates do have access. At this point, Ferebee began filing informal complaints and grievances about the Wallens Ridge law library and its system of providing legal materials.

---

[2] This summary of Ferebee's factual matter is taken from his most recent Amended Complaint and from incorporated exhibits from his initial Complaint (ECF Nos. 1-1, 44).

In April 2019, Ferebee filed a motion for leave to pursue a delayed appeal in the Virginia Court of Appeals. (*See id.* at 14.) On June 21, 2019. The court of appeals denied that motion, stating:

> Under Code § 19.321.1(A), a motion for a delayed appeal may be filed if, through no fault of the appellant, an appeal, in whole or in part, in a criminal case has (i) never been initiated; (ii) been dismissed for failure to adhere to proper form, procedures, or time limits in the perfection of the appeal; or (iii) been denied or the conviction has been affirmed, for failure to file or timely file the indispensable transcript or written statement of facts . . . .

(Ex. 1-2 [ECF No. 1-1].) The court of appeals also stated that any such motion must be filed within six months after the appeal has been dismissed or denied, the conviction has been affirmed, or the circuit court judgment sought to be appealed has become final, whichever is later. (*Id.*) The court found Ferebee's motion was untimely filed because court records reflected that the court of appeals had denied his criminal appeal on the merits on July 24, 2008. (*Id.*) In short, Ferebee filed his motion for a delayed appeal more than 10 years too late.

Ferebee wrote requests to the Wallens Ridge law library, asking for a copy of statute cited in the Court of Appeals denial order—Va. Code § 19.321.1(A)(i–iii). Ferebee provided the law library with the legal history of the law in the state legislature. In reply, officials told him that this statute did not exist in the law library's data base (Am. Compl. 14–15.) Ferebee blames this inability to find the statute on the fact that a "Recreation Supervisor" with no legal research training was assigned to distribute inmates' requested legal materials. (*Id.* at 17.) Thereafter, Ferebee filed complaints and grievances about the library's refusal to provide him a copy of the requested statute.

Ferebee then met with Melanie B. Salyer, the institutional attorney, and, following her suggestions, attempted to appeal the court of appeals ruling to the Supreme Court of Virginia. In September 2019, the Supreme Court of Virginia denied Ferebee's appeal noting: "No appeal lies to this Court from an order of the Court of Appeals denying a 'Motion For Delayed Appeal' filed pursuant to Code § 19.2-321.1(A)(i–iii)." (*Id.*)

Ferebee filed this lawsuit under 42 U.S.C. § 1983 later in September 2019 against Manis and Ravizee. He argued that inadequacies in the law library at Wallens Ridge had deprived him of his right to access the courts. He also complained that Defendant Ravizee had retaliated against him for filing grievances about the problems with the law library by refusing to accept or respond appropriately to his grievances. While this lawsuit was pending, additional events occurred that Ferebee perceived as retaliation and harassment by other prison officials because of his litigation and grievances. He amended his Complaint to state these new claims against additional defendants. (*See generally* Am. Compl.).

On May 25, 2020, Ferebee alleges that Gilley charged Ferebee with a false disciplinary offense for possession of intoxicants. Ferebee says that his cellmate claimed ownership of the intoxicants, but Gilley wrote the charge against Ferebee anyway. Gilley allegedly told Ferebee, "[S]ince you like to file lawsuits, I'll write you a charge." (*Id.* at 20.) Smith authorized the charge, Hensley found Ferebee guilty of the charge, Burgin approved the conviction, Zook denied Ferebee's Level I appeal of the conviction, and Manis (now a regional administrator) denied Ferebee's Level II appeal of the conviction. (*Id.* at 19–21.)

On May 29, 2020, Osborne allegedly told Ferebee, in Counselor Tiller's presence, that she would not notarize Ferebee's legal materials because she was "not going to help" him with

his lawsuits against the prison.[3] (*Id.* 22, 23.) Ferebee then told Counselor Osborne he would "write her up" for refusing his request for notary services. On June 1, 2020, Ferebee complained to Tiller about the delay of a request for legal copies. That same day, Ferebee says Light wrote him a false disciplinary charge for threatening bodily harm to Osborne. Because of the charge, Ferebee went to segregation and did not receive his requested legal copies. Woodard served the charge; Hensley found Ferebee guilty of the charge; Burgin approved the conviction; Zook denied Ferebee's Level I appeal of the conviction; and Manis denied Ferebee's Level II appeal of the conviction (*Id.* at 22–23.)

On June 1, 2020, Ferebee also had a dispute Woodard about the functionality of his television. Woodard confiscated it. Property Officers Daniels and Smith approved the confiscation, and McCray denied Ferebee's grievance. (*Id.* at 24–26.)

On July 11, 2020, Gilbert allegedly told Ferebee, "I see you (Mr. 1983)." (*Id.* at 26.) Gilbert allegedly stated that he was going to "[f]uck [Ferebee] up" because Ferebee had told other prisoners to write complaints on May 30, 2020, about Gilbert spraying "O.C. Mase [sic] on the pod feeders and food trays." (*Id.*)

In August 2020, Carico refused Ferebee's request for an informal complaint form to protest the fact that McCray said he "wasn't going to turn in" Ferebee's outgoing legal mail. (*Id.* at 27.) Ferebee told Carico he had given the mail to McCray, but mailroom staff had never received it. When Ferebee wrote a grievance about Carico's refusal to give him an informal complaint form, Ravizee responded that she would provide him the form and notify other

---

[3] In this section of the Amended Complaint, Ferebee cites the case numbers of six § 1983 cases he had previously filed or had pending in this court or in the United States District Court for the Eastern District of Virginia. (Am. Compl. at 23.)

officers of his need for forms. Ferebee construed this response as Ravizee's warning to Carico and McCray that Ferebee was going to "write them up." (*Id.*) On September 2, 2020, while Ferebee was outside for recreation, McCray allegedly "harassed" Ferebee and "threaten[ed] to get" him because Ravizee had told McCray that Ferebee "wrote him up" about a dispute over outgoing legal mail. (*Id.* at 28.)

The defendants have filed a motion to dismiss (ECF No. 52) as to Ferebee's claims that (1) he was denied access to the courts, and (2) retaliated against or harassed because of his lawsuit and his grievances about the Wallens Ridge law library. Ferebee has responded to the defendants' motion (ECF Nos. 60–61), making the matter ripe for consideration.[4]

## II.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).[5] The court's inquiry must focus only on "whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" In considering a Rule 12(b)(6) motion, a court must generally accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To state an actionable claim, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative

---

[4]  Ferebee sought to pursue discovery, but the court has stayed discovery (ECF No. 73), pending the court's decision on the Motion to Dismiss.

[5]  The court has omitted internal quotation marks, alterations, and/or citations here and throughout this memorandum opinion unless otherwise noted.

level," to one that is "plausible on its face," rather than merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   DISCUSSION

### A. Access to Courts

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). Ferebee contends that shortcomings in the Wallens Ridge law library system for inmates denied him the ability to research and file the type of appeal that he wished to pursue. The court construes this claim as asserting denial of the right to access the courts.[6]

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *overruled in part by Lewis v. Casey*, 518 U.S. 343 (1996). Such legal assistance programs are constitutionally sufficient if they provide inmates the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Casey*, 518 U.S. at 356. A legal assistance program is "more

---

[6] Ferebee's later submissions assert that law library issues denied him "Free Exercise To Petition The State Government." (*See, e.g.*, Resp. 6 [ECF No. 60].) Because Ferebee's allegations concerning his attempts to obtain court permission to pursue a delayed criminal appeal, the court believes his claim is properly characterized as alleging denial of access to the courts.

than adequate" if it "permit[s] an inmate to explore possible theories of relief, determine the facts that must be present[ed] to make out claims under any available theories, and to frame pleadings before the federal or state courts should he wish to do so." *Strickler v. Waters*, 989 F.2d 1375, 1386 (4th Cir. 1993).

On the other hand, the right of access does not require prisons to provide an inmate litigant with physical access to a law library or to provide him with copies of whatever type of legal material he may believe is necessary to his litigation efforts. *Casey*, 518 U.S. at 354, 356. Moreover, prison officials may impose restrictions on inmates' access to available legal materials and services, so long as those restrictions are reasonably related to penological interests. *Id.* at 361. As such, an inmate's mere theoretical assertions about deficiencies of a legal assistance program or complaints about restrictions on law-library use cannot, without more, support a constitutional claim of denial of access. *Id.* at 351. To state an actionable claim for denial of access, the inmate must show that specific deficiencies in the legal assistance or materials available to him resulted in particularized harm to his litigation of a nonfrivolous claim or claims. *Id.* at 351–53.

The inmate may satisfy this injury element by showing that a pleading "he prepared was dismissed for failure to satisfy some technical requirement [that particular] deficiencies in the prison's legal assistance facilities" prevented him from learning, or "that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* at 351. Conclusory allegations about mere delays or inconveniences to an inmate's legal work cannot support a denial of access claim. *Strickler*, 989 F.2d at 1383.

Under this precedent, Ferebee's general complaints about the law-library system at Wallens Ridge are not sufficient to state a constitutional claim of denial of access. The restrictions on physical access to the law library, the request process, and the charges for copies are all merely restrictions, clearly related to legitimate penological interests regarding security and finances. Moreover, Ferebee has not shown that any of these restrictions or inconveniences caused him specific harm in his litigation efforts.

Ferebee's one specific claim about the inadequacy of the Wallens Ridge law library is that he was unable to obtain or research the state statute cited in the order from the Court of Appeals of Virginia: "Va. Code Ann. § 19.321.1." It is undisputed that the Code of Virginia does not include a § 19.321.1, and that this statutory citation in the court of appeals' Order was a typographical error unrelated to Defendants in this case. When Ferebee requested a copy of the cited statute number, library staff informed him that the Wallens Ridge database did not contain any such code provision. *Id.* Wallens Ridge law library staff could not provide Ferebee a copy of a statute that does not exist. Similarly, their failure to do so does not support a finding that the law library was constitutionally inadequate or that any staff member withheld a copy of the statute to interfere with Ferebee's litigation efforts.

More importantly, Ferebee has not shown that any alleged deficiency in the library holdings or the library regulations prevented him from pursuing his motion for a delayed appeal. Indeed, the order issued from the Court of Appeals of Virginia indicates that Ferebee's motion was denied because he filed it more than two years too late, not because he failed to follow some statutory requirement that he was unable to access from the Wallens Ridge law library.

Moreover, neither Ferebee's lack of access to the nonexistent statute that he cited in his library request, nor his inability to do physical statutory research in a law library to discover the intended statute number, hampered in any way his appeal to the Supreme Court of Virginia. He was able to file this appeal, and it was not dismissed based on any technicality that he might have remedied if he had obtained a copy of the *intended* statute, Va. Code Ann. § 19.2-321.1. Rather, the Court denied Ferebee's appeal only because an appeal is not authorized under the Virginia Code from a denial of the type of motion Ferebee had pursued.

The court concludes that Ferebee has failed to allege an "actual injury" to his litigation efforts caused by any inadequacies in the Wallens Ridge law library or legal assistance programs. The Court of Appeals of Virginia denied his motion for a delayed appeal as untimely, and the Supreme Court of Virginia dismissed his appeal because no such remedy existed by law. In short, Ferebee's allegations do not state the required elements of a claim that any defendant deprived him of his constitutional right to access the court. *Casey*, 518 U.S. at 351-53. Therefore, the court will grant Defendants' motion to dismiss as to Ferebee's court-access claim.

## B. Retaliation

Prison officials may not retaliate against an inmate for exercising his constitutional right to access the court. *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). Inmates also have a "First Amendment right to be free from retaliation for filing a grievance."[7] *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 546 (4th Cir. 2017) ("*Booker II*"). On the other hand, claims of

---

[7] It is well established that the protections of the First Amendment apply to the States through the Fourteenth Amendment. *See Bigelow v. Virginia*, 421 U.S. 809, 811 (1975).

retaliation against prison inmates must be examined with care because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct" or other concerning behaviors. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate three elements: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) ("*Martin I*"). It is well-established that the filing of a grievance or a lawsuit is protected conduct that satisfies the first element. *See Booker II*, 855 F.3d at 541.

The second element may be satisfied if the plaintiff alleges that the defendant's action adversely affected his future exercise of his constitutional rights. *Martin I*, 858 F.3d at 249. To do so, the plaintiff must prove that the defendant's allegedly retaliatory conduct caused more than *de minimis* inconvenience *and* that it "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). The adverse action inquiry is a contextual one. *See Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). Courts should bear in mind that "[p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.* (cleaned up). The filing of a disciplinary action against a prisoner can satisfy the second element of a retaliation claim. *See Booker v. S.C. Dep't of Corrections*, 583 F. App'x 43, 44 (4th Cir. 2014) ("*Booker I*") (concluding that the filing of a

disciplinary charge in response to constitutionally protected conduct "would likely deter prisoners of ordinary firmness from exercising their First Amendment rights").

Third, the plaintiff must state facts showing a causal relationship between his protected activity and the defendant's conduct. *Martin I*, 858 F.3d at 249.

> In *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) ("*Martin II*"), the Fourth Circuit applied the burden-shifting standard from *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), to causation in inmates' retaliation claims. Concluding that the burden of showing causation is "best shared," the Fourth Circuit adopted *Mt. Healthy's* "same-decision test." *Martin II*, 977 F.3d at 299–300. The same-decision test proceeds in two steps. First, an inmate must show "that protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." *Id.* at 301. If the inmate does so, the burden shifts to the defendant to demonstrate by a preponderance of the evidence that he "would have reached the same decision . . . in the absence of the protected conduct," *id.* at 299 (quoting *Mt. Healthy*, 429 U.S. at 283).

*Mateen v. Collins*, No. 7:19CV00620, 2021 WL 4432517, at *3 (W.D. Va. Sept. 27, 2021). At the motion to dismiss stage, a plaintiff must show that his protected activity was a substantial, motivating factor in the defendant's decision to take the adverse action at issue. *Id.* Conclusory assertions that a defendant acted from a retaliatory motive will not suffice to make this showing. *Adams*, 40 F.3d at 74. Closeness in time between the protected conduct and the adverse action may be sufficient for a *prima facie* case of causation. *See Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (explaining that courts can infer causation when the adverse action occurs shortly after a plaintiff engaged in a protected activity).

Once the "plaintiff establishes that his protected conduct was a substantial or motivating factor in the defendant's decision to take adverse action, the defendant is appropriately tasked with explaining why h[is] decision was not animated by retaliatory

motives." *Martin II*, 977 F.3d at 301. And if a defendant meets the burden to show a nonretaliatory motive, then the plaintiff again bears the burden of persuasion to contradict the defendant's evidence and prove that the defendant's reason is a pretext. *Foster*, 787 F.3d at 250.

    *1. Ravizee and the Law Library Grievances*

    Ferebee lodges his initial retaliation claim against Ravizee. He alleges that when he filed grievances complaining about the Wallens Ridge law library, Ravizee rejected his filings to retaliate against or punish him for those complaints. The copies of grievances in the record indicate that Ferebee first complained in an Informal Complaint Form on July 17, 2019, that the law library refused to provide him with a copy of Va. Code Ann. § 19.321.1, stating that no such statute existed on the library's legal data base. (Ex. D at 61 [ECF No. 1-1].) Ferebee then filed the next remedy in the grievance procedure, a Regular Grievance, complaining about not being provided a copy of the statute. Ravizee rejected the filing as a Request for Services, stating: "If item(s) not available . . . place a request to speak with facility attorney" (Ex. E-1 [ECF No. 1-1].) Ferebee filed a second Regular Grievance, complaining that after following advice from the Institutional Attorney, he had still not received a copy of the statute he needed to understand the court of appeals' denial of his motion for delayed appeal and indicated he had a court deadline. Ravizee rejected this Grievance on July 22, 2019, for insufficient information. She advised Ferebee to provide his court deadline and information about the court of appeals' decision. (Ex. E-3 [ECF No. 1-1].) In a third Regular Grievance, Ferebee repeated his complaints, demanding that Wallens Ridge compensate him for not providing legal materials. Ravizee rejected this filing for several reasons, including the fact that Ferebee's inability to obtain the statute he had requested "did not [a]ffect the outcome of the court's

decision." (Ex. E-5 [ECF No. 1-1].) Ferebee also accused Ravizee, in a later incident, of inciting other officers to retaliate against Ferebee by informing them that Ferebee had requested Informal Complaint Forms and she had provided him with forms.

Ferebee's claims against Ravizee related to the purported inadequacy of the law library fail on the third prong of the retaliation analysis. He simply has not stated any facts indicating that Ravizee responded to his grievances with any intent to retaliate against him for the content of his grievances or for his lawsuit. Without supporting facts, Ferebee's conclusory pronouncement that Ravizee retaliated against him cannot satisfy the causation element of a § 1983 retaliation claim. *Adams*, 40 F.3d at 74. Ferebee simply did not like Ravizee's responses. Accusations of improper denial of grievance access or improper grievance responses do not give rise to any constitutional claim actionable under § 1983. *See Booker II*, 855 F.3d at 541 ("[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process."); *Guinn v. Crumpler*, No. 7:18-CV-00274, 2020 WL 1666301, at *6 (W.D. Va. Apr. 3, 2020) (citing cases finding no right to grievance procedure access and denying liability for unsatisfactory grievance responses). The court will grant Defendants' Motion for Summary Judgment as to Ferebee's claims against Ravizee.

   2. *Alleged Retaliatory Disciplinary Charges*

Ferebee alleges two incidents of retaliation in which he claims an official filed a "false" disciplinary charge against him because of his pending lawsuit. First, Ferebee alleges that, on May 25, 2020, Gilley charged Ferebee for possession of intoxicants that his cellmate claimed to own because Ferebee "like[d] to file lawsuits." (Am. Compl. at 20.) Second, on June 1, 2020,

Osborne's report of Ferebee's conversation with her allegedly caused Light to write a charge against Ferebee for threatening bodily harm; specifically, Osborne had allegedly told Ferebee just three days earlier that she would not notarize items for his lawsuits because she did not want to help his litigation and he threatened to "write her up" (*id.* at 22-23).

Liberally construing Ferebee's pleadings, the court concludes that, as to these two charges and these two defendants, Ferebee has alleged *prima facie* § 1983 claims of retaliation. He alleges that each of these defendants took an adverse action against him (by filing or allegedly instigating a disciplinary charge) after stating that Ferebee's litigation effort (his exercise of a protected right) was a motivating factor for that charge. Accordingly, as to these two alleged charges, purportedly lodged or instigated by Defendants Gilley and Osborne, the court will deny Defendants' Motion to Dismiss.[8]

### 3. *Other Retaliation Claims*

The remainder of Ferebee's retaliation claims, however, fail to rise to the level of a *prima facie* case. Ferebee does not allege any facts on which he could argue that other defendants related to these incidents or the resulting disciplinary charges (Tiller, Smith, Light, Woodard, Hensley, Burgin, Zook, or Manis) took any action with intent to retaliate against Ferebee. These various defendants allegedly overheard conversations, wrote a charge based on another employee's report, failed to promptly provide copies of legal materials, conducted hearings on

---

[8] Defendants argue that Ferebee's retaliation claims against officials who charged him with disciplinary infractions must fail because those charges were supported by "some evidence" and were upheld after a hearing and on appeal. *See Guinn*, 2020 WL 1666301, at *7 (holding that, because disciplinary charges were supported by "some evidence," inmate's retaliation claim failed). After the *Guinn* decision, however, the Fourth Circuit decided *Martin II*, which arguably rejected the "some-evidence" test for allegedly retaliatory disciplinary charges and adopted the "same-decision" test instead. *See, e.g., Whitten v. Johnson*, No. 7:19CV00728, 2021 WL 1208053, at *3 (W.D. Va. Mar. 30, 2021). Therefore, the court will deny the Motion to Dismiss as to Gilley and Osborne and the allegedly retaliatory disciplinary charges.

the disciplinary charges, or approved or upheld the guilty findings on appeal. But Ferebee does not allege any facts to suggest that any of these defendants took any adverse action against him based on knowledge of his lawsuit(s) or out of any intent to retaliate against him for bringing lawsuit(s). *See, e.g., Brown v. Va. Dep't of Corr.*, No. 6:07cv33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation") (quoting *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). Ferebee's naked assertion that their actions constituted retaliation is neither entitled to a presumption of truth, *Iqbal*, 556 U.S. at 678, nor sufficient to satisfy the causation element of a § 1983 retaliation claim, *Adams*, 40 F.3d at 74.

Likewise, the court finds no factual support for retaliation claims related to the other events about which Ferebee complains. He provides no factual link between his lawsuits or grievances and Woodard's decision on June 1, 2020, to confiscate his television as inoperable. Similarly, Ferebee does not connect later official decisions about this confiscation (by Daniels, Smith, and McCray) to any exercise of Ferebee's First Amendment right to access courts or his right to be free of retaliation for grievances.

The court reaches a similar conclusion about the alleged disagreements about Ferebee's outgoing legal mail in August 2020. Ferebee fails to allege that Carico's refusal to provide him with an Informal Complaint form had any relationship whatsoever to Ferebee's past grievances or lawsuits. He also does not show how McCray's alleged refusal to turn in his legal

mail or McCray's alleged harassment or threat to "get" Ferebee had any connection to

Ferebee's exercise of a protected right.[9]

Finally, the court concludes that officers' idle, verbal threats, such as Ferebee alleges,

are not sufficiently adverse to support a § 1983 retaliation claim. A prison official's threat that

the inmate plaintiff would "regret it later" is "an insufficiently adverse action to support a

retaliation claim, in part because it is such a vague threat." *Ofori v. Fleming*, No. 7:20-CV-00345,

2021 WL 4462922, at *10 (W.D. Va. Sept. 29, 2021).

> In *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010), the
> court synthesized and summarized case law addressing whether a
> threat was sufficient to constitute an adverse action. It explained
> that verbal threats of retaliation, unless they are sufficiently
> specific and direct, generally do not constitute an adverse action
> for purposes of a retaliation claim. So, for example, a threat that
> the plaintiff would have to "pay the consequences for filing a
> grievance" was not an adverse action, but the statement, "If you
> don't stop writing grievances, I'm going to break your f**kin'
> neck" was sufficient. . . . *See also Torres v. Schafer*, No. 1:20cv257,
> 2020 WL 1861872, at *5 (W.D. Mich. Apr. 14, 2020) (finding that
> allegations of "petty verbal harassment" and "vague threats" were
> insufficient to show adverse action).

*Id.* at *10. Gilbert's alleged threat to "f*** up" Ferebee on July 11, 2020, was vague and, as

alleged, was not specifically directed toward discouraging Ferebee from filing lawsuits or

grievances. (*See* Am. Compl. at 26.) Although Gilbert allegedly referred to Ferebee as "Mr.

1983" (*id.*), it is Ferebee who relates Gilbert's broad threat to an event two months earlier

when Gilbert allegedly sprayed mace on food trays and workers and Ferebee told other

inmates to write the officer up. The court simply cannot find that Gilbert's threat constituted

---

[9] In addition, allegations of mere verbal threats or harassment by prison officials are not sufficient to support
any constitutional claim actionable under § 1983. *See Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005)
(unpublished).

an adverse action so specifically adverse or chilling to Ferebee's First Amendment rights as to support a § 1983 retaliation claim. Defendants' motion to dismiss will be granted on this claim.

## IV.  CONCLUSION

For the stated reasons, the court will grant Defendants' Motion to Dismiss in part and deny it in part. The court will grant Defendants' Motion to Dismiss as to the following defendants: Ravizee, Tiller, Smith, Light, Woodard, Hensley, Burgin, Zook, Manis, McCray, Carico, and Gilbert. The court will deny Defendants' Motion to Dismiss as to Defendants Gilley and Osborne as to Ferebee's claims that: (1) on May 25, 2020, Gilley retaliated against Ferebee for his prior lawsuit by charging him with possession of intoxicants; and (2) on June 1, 2020, Osborn caused another officer to write a charge against Ferebee for threatening bodily harm after Ferebee threatened Osborne that he would "write her up" for refusing to notarize items for his lawsuits. (*Id.* at 22–23).

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 28th day of March, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE